All right. And once you're situated, will counsel on People v. Caraga please approach? Good morning, Your Honors. My name is Harold R. Finkel, and I represent the appellant Michael Caraga. All right. Good morning, Your Honors. Assistant State's Attorney Brian Levitsky on behalf of the people of the state of Illinois. All right. And as I informed prior counsel, I'll tell both of you that the microphone in front of you is only for recording. And if you would keep your voices up so everybody in the courtroom can hear. And Mr. Garfinkel, how much time would you like, keeping in mind that we have read the briefs and we're very familiar with the record? Thank you, Judge. I would expect about 10 minutes. Okay. And would you like to reserve some time for rebuttal? Three minutes for four minutes at most, Judge. And Mr. Levitsky? Three deaths for 15 minutes, Your Honor. All right. Thank you. All right. And please have a seat. And Mr. Garfinkel, when you're ready to proceed, please do. As you've read, there are primarily three arguments I'm going to make with regards to Mr. Caraga's case. The first would be that the trial court committed an abuse of discretion when they admitted the co-consolidator statements against Mr. Caraga, both pre and post his engagement in a transaction on Bishop Street. The second argument would be if the State did not prove their case beyond a reasonable doubt. And the third argument goes to whether or not the trial court committed an abuse of discretion when they admitted uncharged conduct. You're talking about the license? That's right. And prior transactions. Primarily, my first argument would be as follows, Your Honors. The trial court blatantly committed an abuse of discretion when they admitted co-consolidator statements against Mr. Caraga when the only independent evidence of a conspiracy were the following three points. The first point being was that Mr. Caraga was an unlicensed loan originator, not even a mortgage broker. The second was that Mr. Caraga had knowledge of the fact that the prospective buyer, agent in this case, wasn't going to live in the residence. And the third was with regards to statements Mr. Caraga made to Agent Chavez at the time of the closing. Though that is the only independent evidence that the State introduced which would even remotely support a foundation for the admission of the co-consolidator statements. And in so doing that, clearly, this is what the State said the conspiracy was. That Mr. Caraga, as an unlicensed originator, engaged in the application or the processing of a loan when all he knew was that the buyer, the agent, had no intention on living in the residence. But that's how the conspiracy was. And as I know, Your Honors, you've read the briefs, the conspiracy was a completely different set of facts. Does it matter that you're talking about their agreement to split the money? But here, a co-conspirator could have a very limited role. And he had a very limited role in this conspiracy. And this was something that there had been past contact between him and one more of the co-conspirators. What's the conspiracy? Is the conspiracy that Mr. Caraga is going to act as a loan originator for a loan when all he knows is that the buyer has no intention of living there, that it's not going to be served as a primary residence, as a regulation on the FHA guidelines? Or was the true conspiracy that Bozic, as the orchestrator of this scheme, sought to split the proceeds with the buyer? According to the record, there was evidence that the defendant received some of the money after going to a restaurant. That was at the desk. What you have was a dirty attorney sitting at a meal at Gibson's in which he said, in which he overheard Bozic say, I need to go take care of Caraga. I need to go take care of Caraga. So it's a bench trial, right? It was a bench trial. Can't the judge draw an inference from that statement that Bozic said, I've got to give Caraga his share of whatever it is? We get the lion's share of the proceeds to split with my joint venture members, but we've got to take care of Mr. Caraga. But respectfully, the statement at the restaurant was, I need to go take care of Caraga. Prince doesn't even testify that when he overheard that statement, that Bozic said anything either directly or influentially that I need to go take care of him for this transaction. They engaged, as your honors know, in multiple transactions. Was there anything else in the record that Bozic would be taking care of Caraga for? Well, there was certainly testimony originally from Jimmy Pirulimus, when he spoke with the prophet, that he had engaged in other transactions. And there was no evidence that Pirulimus ever knew Caraga. Certainly, Bozic had been involved in other transactions with Caraga. And there was nothing to be said, nothing to be said at that restaurant, that I'm going to go take care of him for Mr. Caraga's involvement in a loan, and most importantly, that Caraga knew that the buyer and seller were going to split the proceeds of any, any loan. Nothing at all. It was, for all Prince knew, Bozic was saying, I need to take care of him for paying for dinner, or something else. Nothing at all about the business transaction. The trial judge could have drawn that inference, but was he required to? I mean, isn't that, again, the evidence in the light most favorable to the defendant, not the prosecution? But when you're going to admit a co-conspirator statement, you have got to have independent evidence of, of a conspiracy, or excuse me, independent evidence to support a conspiracy, which in this case, clearly, the conspiracy is fueled by the division of proceeds on a loan. Nothing at all to do with Caraga being licensed or unlicensed, or most importantly, whether or not Caraga knew about, whether he knew whether the, whether the buyer was going to live in the residence. But he knew, he, as you said, he had prior contact with Bozic, and we don't know, right? He knew what his role was. He had a specific... What was his role? Yes. He had a specific role in this. They tried, had tried different brokers, right? And then they got to him. What was his role? What was his role? I'm sorry. What was his role? Oh, well, you tell me what his role was. He was a loan originator. Right. And he knew that, in order to get that loan. But, but he didn't generate any connection. No, he was very careful. Why did he whisper, in a low voice, on that tape, where he talks about, you know, make sure you don't change anything, you know, we've got to make sure we get this through? Well, I mean, I... Right? He, he did lower his voice, but to jump from Mr. Corrado's lowering his voice to having knowledge that the conspiracy was solely to, to split the proceeds of a loan, I think that is a huge jump, that you need, that you need intermediate steps, and that you need... No, wait, wait, wait. You keep going to... Isn't... It's a fraud. The loan is a fraud. It was obtained fraudulently. Right? That's what... And the fact that they made money off of this, that's secondary. You seem to say that what's secondary is primary, that is, that they had an agreement to split the proceeds. Really, that is only driven later. What's driven all this is that first you have to get that loan. That's what this case is all about, is that loan. Not about how the proceeds of the venture and so forth. You're trying to piggyback. There's no evidence whatsoever to prove that Corrado had any knowledge that the buyer had no intention on repaying the loan. And Corrado goes to such great lengths, both at the closing and at that face-to-face meeting at Vista, to say, listen, the loan needs to be paid. The rental payments are going to cover the loan. He does his best to lower the insurance rate. It poses a request. It poses a request. That's not the buyer's request. No, but just, well, remember, Bozic is a professional. And he's played himself out to be professional. And it wouldn't be unusual for Corrado to think, after having done business, legitimate loans, legitimate loans with Bozic, that Bozic would want to do the best he could for his clients. But that doesn't show in any way whatsoever that Corrado had any knowledge. The attorney gets up in his stand and says he had never mentioned at all anything about the pernicious dealings or the nature of the loan. Colan says, the undercover agent says that he never in any way intimated, suggested, or directly told Corrado that this loan was a sham. There's not one witness. Is that there other than a conspiracy? Usually you don't have evidence like that. That's why it's circumstantial evidence they have to look at. Very rarely do you have people having direct evidence, unless you have somebody maybe on a tape or something. So that's rare. So we have to look at the circumstantial evidence. So you're saying, well, because we don't have direct evidence, he's not guilty? What act do we have of Corrado that would show knowledge that he knew about the existence of a conspiracy to split loan proceeds? All Corrado knows. He says to the agent when they enter the closing, he says, I don't know anybody here. Well, yeah, I do know this guy, but I don't know anybody else. My wife drove me here, and I don't really have anything to do with this. The judge is not licensed. He's an unlicensed loaner. He knows at the very least. Again, you could draw that inference if you're the trier of fact, but do you have to? Well, when you don't – when the State doesn't prove independent facts to support the true conspiracy, then the trial court does not have the leisure to then draw an inference which is so unsupported by what we do know. What do you mean by a true conspiracy? A true conspiracy. The true conspiracy. The conspiracy in this case was clearly the fact that Bosick was going to make $120,000 from a loan. All that State showed in terms of conspiracy was that, hey, he's an unlicensed originator, and at the very most, all he knows is that the buyer has no intention of living there. That's all they showed by evidence, and that was the conspiracy. And in doing so, they mischaracterized the conspiracy. Had they said that this was a conspiracy about loan proceeds being divided between a buyer and seller, then they could have admitted those statements, but they don't even do that. Not even close. And it's for that reason, clearly, that the trial court abused its discretion. Secondly, with regards to having proven this case beyond a reasonable doubt, Judge Flan, the trial court indicated that this was an accountability case and that it would be predicated upon specific intent joined by the parties for common design. If they can't prove that Mr. Kaurian had any knowledge of the true conspiracy, as if he were lying. You keep referring to the true conspiracy. The only conspiracy. The people involved wanted to get a loan using Mr. Rodriguez. For what purpose, Judge? To do what? You keep saying that to divide the proceeds is the true conspiracy. The conspiracy is to get a loan using untrue information. And if that buyer pays back the loan? Kaurian had no knowledge whatsoever that Cohen, the agent, was never going to pay back the loan. So at most, you had Kaurian knowing one fact and one fact only. Again, you're drawing the inferences in this bench trial in favor of your client. And taking everything together, his participation in the transaction, the subtle voice conversation with Rodriguez saying, you know, you understand you can never, ever submit a change of address, then I would be tagged with this loan. That's what the feds come in when that happens. Is that what any honest loan broker is going to say? I've taken out loans. No home broker has ever said to me, you know, are you sure everything on your application is true? You didn't make anything up, did you? He did that to verify and to ensure that none of the contents of the application were fraudulent. Well, wait a minute. Didn't Mr. Kaurian help develop the income tax returns or the loan application for this drug buyer knowing that it was false information? Respectfully, I believe it was the dirty attorney, Mr. Pritz, who generated the profit loss statement. All Kaurian does in this application is, as the record says, assemble the documents. His name doesn't even appear on one signed document. His boss, Joe Messina's name appears on that. And so we should assume that even though Mr. Messina never had a face-to-face meeting with Mr. Rodriguez, that he, in fact, is the one who submitted the loan application. He has the most incentive. He's the one making the $9,000 on the deal. It's adjusted to $5,000. We don't even have any proof that Kaurian mailed the guns. Not that we have. It's a statement at a restaurant. I'm going to take care of Kaurian. Take care of him for what? Take him to the valet parking. Maybe it is. It doesn't matter, does it? If he's part of a conspiracy. And, again, he just has to be part of the conspiracy. And anything by the co-conspirators, this kind of design comes in. Show the knowledge. Show one fact in this case that establishes Michael Kaurian had any knowledge of a conspiracy. Why didn't he? Why didn't he? It was left blank. The signature was left blank. The date was left blank. The date that was put on there was the wrong date on the application. I would submit that those would be procedural deficiencies. Certainly it doesn't flow from that procedural defect knowledge of a conspiracy to split proceeds. The conspiracy, again, that we're talking about is a conspiracy to get that loan. What happens after they get the loan, that's a different issue. But his participation happened to be on the front part, which is if we don't get the loan, there's no money. They needed somebody, and the other brokers apparently didn't work out. He worked out. We need somebody to do what, Judge? To get the paperwork done, get it through. It goes through underwriting. He prepares it. Why would he whisper? Why did he deny everything to the agent at the closing when everything was up? His actions, the judge can look at all that and make a determination as to what he knew and what he didn't know. To be sure, Karate does not go into the closing with clean hands. He has no license. When Chavez enters with HUD agents and OIG agents and Cook County State Supreme Investigators, he is not going to be forthright and say, oh, by the way, I'm an unlicensed originator, and I'm engaged in a closing. Whether he was unlicensed or not had nothing to do with him saying, I don't know anybody here. I don't know anybody. Oh, yeah, I do know him, but I don't know these other people, when that was a lie. It doesn't have anything to do with him not being licensed. But that would be a reasonable basis to explain what would motivate Karate to make those untruthful statements. And why should we assume that the reason that he made that lie? Again, that is drawing the inferences most favorably to your client, which we cannot do on appeal. But what you can do is if you rule and hold that the trial court abused its discretion by meeting co-conspirator statements when there was absolutely no evidence of a conspiracy that Mr. Karate had knowledge of, Judge, and then certainly the court has to, if not look at my most capable defense, certainly show the statement. In a lot of criminal cases, to put it in a different context, if two of the defendants plan to murder somebody, they don't let the third defendant in on it, but they say, hey, you're going to act as a lookout. We're going to go in and take care of the victim. It doesn't matter that the lookout doesn't know that they plan to murder him. He's accountable. Why does Bozin take such effort to coach Cohen before he speaks to Karage? If Karage is involved in this deal, then he would need to coach him on answering all Karage's inquiries. But my question goes to your point that Karage had to know about the whole deal in order to be tagged as a co-conspirator. And the law is otherwise. He doesn't need to know about the whole deal. He just needs to agree to participate however they ask him to participate, which he did. And there's no evidence to support what they asked Karage to do other than act as a lone originator, an unlicensed lone originator. There was absolutely no evidence, Judge, to support that Karage knew that Cohen's property law statements were not truthful. There is no evidence to support that Karage knew that Cohen was going to default the loan. And certainly there was no evidence to support that Karage knew that Philly Limits or Cohen were going to split proceeds and give the majority of the line share to Bozin. There's been no evidence. Every witness who testified said Karage knew nothing, knew nothing. So the fact that he participated in three other transactions with Bozic that happened to involve a straw buyer is just irrelevant? And there's been absolutely no evidence to show. And that was the first co-conspirator. I know what you're going to say. You're going to say, no evidence to show he knew they were straw buyers. But the fact is he participated in those transactions and Bozic went to him for a reason. But we have no evidence to show that Karage had any deep involvement in those transactions. But most of them... Doesn't have to be very deep. But there was no evidence to support that he had any involvement of a duplicitous nature. There was one fact that came out in that trial, which showed that in those prior three or four transactions, that Karage had any knowledge or had any engagement in those dirty deals. Nothing whatsoever. Okay. And the trial judge could have... You made that argument to the trial judge, right? And he could have said, yeah, I think he was just a dupe. He was a dumb dupe who wasn't licensed and I find you not guilty. But he didn't see the evidence that way. And he relied on that. And he was holding when he said, you know what, Mr. Karage, your mistake in this case was your familiarity. Your familiarity with Bozic. And therefore he took into account those prior uncharged acts that clearly show if he did something in the past, he did it now, and that violence. It can be admitted not for propensity, but to show his familiarity with Bozic and the fact that those transactions involved straw buyers for whatever value it has. It doesn't mean the very experienced trial judge used that evidence for propensity. What was the balancing test under 403 that has to be done? I think the record reflects that he did it. I would argue that there wasn't a proper balancing test which showed that the equities favored in admitting prior uncharged conduct. There was absolutely no evidence whatsoever to show that Karage had any knowledge in those prior dealings that there were straw buyers. Okay. All right. Thank you. Anything else? All right. Mr. Levitsky. Thank you, and may it please the Court. The scheme in this case was to use the good credit and fake financial documents of a straw buyer to obtain a fraudulent FHA loan, to split the proceeds, walk away from the loan, and leave the lender holding the bag. Okay. So where's the evidence that Mr. Karage, other than perhaps knowing that the straw buyer didn't intend to live in the property, that he knew about that conspiracy you just outlined? Right. So I think we have to look at the conspiracy in sort of two different layers, right? So there's the FHA loan for the primary residence, and then there's another layer of the fake financial documents. And when the defendant agreed to participate in this conspiracy, he may not have known that all the financial documents were fake, but he agreed to participate in a conspiracy where a fraudulent loan application was going to be submitted. That was the crime in this case. And in order for this scheme to be effectuated, we needed some different players. The hub in this case was the recruiter, Buzik. We had the seller, Hill Lemus. We had lawyers, Pritz and Green. And we had the defendant, who was the loan originator. So he was, as the Court recognized at sentencing, relatively smaller in terms of his contribution, but he was absolutely necessary for the scheme to work. Now, the defendant first argues that there wasn't sufficient independent evidence, but let's talk about all the independent evidence that shows that he was a knowing part of this conspiracy. And we have to look at it together, and we have to look at it through the lens of someone who is an experienced loan originator. First, we have the face-to-face meeting where, as you guys are aware, he lowers his voice, he leans in, and he says, you know, I know the previous guys, they weren't actually living there. But that's the whole thing. This is an FHA loan. The applicant has to be living there for it to be a primary residence. And he talks about previous times where someone changed an address, the center red flagged a GMAC, and that's exactly what the defendant was worried about, something like this was going to happen again with PMAC, where he was going to have to buy back the loan if the underwriters figured out the conspiracy. Then we have the fact that the defendant was working with a recruiter throughout these transactions. He wasn't actually working with a straw buyer. We have the fact at the closing he lied about the fact that he was a loan originator. He put Joe Messina's name down on the loan application itself. That's another part of the fraud in this case. He lies to the agent afterwards to minimize his participation. And, Justice Mason, you were talking to counsel about this before. The lies that he makes, saying that he doesn't know anyone, that disassociates him with the co-conspirators. That's the sort of evidence that shows his consciousness of guilt as to the conspiracy. So from this all together, we knew the defendant was working with more than two people. He knew that there was a common plan, and he himself took action to further it. And that's where we get independent knowledge of the conspiracy. Now, we're looking at this, again, under the abuse of discretion standard, and as this Court is aware, the judge could have taken the inferences in this case and looked at them the other way. But the judge in this case took the inferences together, found that they supported the fact that the defendant knew he was participating in this conspiracy and didn't abuse his discretion when he made that ruling. And, again, the defendant never even challenged the law that there was a conspiracy. The objection was only as to the hearsay statements. The defendant argues that Bozek went to great lengths to hide this conspiracy from the defendant, that it only went to the fact that there were financial histories and other financial statements in this case. But the defendant didn't need to know any of that in order to participate in this conspiracy. In fact, it would make sense for them to hide that type of information from the person whose job is to give a loan application to GMAC knowing that he might have to buy back the loan. I just want to briefly address the other two points regarding the reasonable doubt standard. Again, we're looking at all of this under the Collins standard. As this Court is aware, conspiracies are, by their nature, clandestine. There were a lot of inferences in this case. And the Court took those inferences in the light most favorable. The Court made those inferences in favor of finding the defendant guilty of loan fraud. And at this stage in the proceedings, those inferences have to be taken in the light most favorable to the people. And after looking at all this evidence in the light most favorable to the people under the Collins standard, the people absolutely established all the essential elements of this case beyond a reasonable doubt. So what about the argument that the evidence of Mr. Carraga's participation in three or four other transactions with Bozek should not have been admitted absent some evidence that he was aware that those were straw buyers? Again, the other kinds of evidence in this case, the prior transactions as well as the fact that he wasn't a licensed broker, it all went just to show knowledge and intent and lack of mistake. And that's what it was considered for. The judge, again, could infer knowledge from presence to the fact that it wasn't just once or twice, it was three or four times, as well as the fact that this was another case involving a straw buyer. And the judge did engage in balancing tests and specifically found with respect to the three or four prior transactions,   And that's what it was considered for. And it goes to knowledge of the defendant. So it was absolutely admitted for a proper purpose in this case. If there are no further questions, we would respectfully ask this Court to affirm the defendant's conviction. Thank you. All right. Thank you. All right. Briefly, Mr. Gershenko, go ahead. Yes, ma'am. Just to briefly reiterate, and I think it's important, that not one witness who testified in this case said that they shared information with Mr. Carraga and that Mr. Carraga acknowledged that the transaction that took place on Bishop Street was in any way fraudulent. All that has been established is that Mr. Carraga, as an unlicensed loan originator, had knowledge that property FHA regulations, which require a person to live without residence or residence requirement, wasn't being complied with. That's not the conspiracy in this case. The conspiracy in this case clearly was the fact that BOSIC and other individuals, buyers and sellers, stood to make a ton of money from this case, $120,000. Everyone knows that that is what the conspiracy was. And there's been no evidence to suggest whatsoever that Mr. Carraga had any knowledge. Getting the loan had nothing to do with the ultimate conspiracy. They didn't have to get the loan in order to get the money. I mean, that's what you're saying. I mean, of course, it's all, as your colleague just said, I mean, there are two, basically there's a front part and there's a back part. He was involved, the defendant was involved in the front part. What did the evidence show that Mr. Carraga was involved in any front part? There were many, many steps to securing this loan. It had to go through underwriting. It had to go through his boss, Mr. Messina. We don't know that it went through his boss. Well, we know this. We know his name appears on the application. We don't know that he signed it. And we certainly know that he never had a face-to-face meeting with the buyer. With Mr. Messina, Judge? Mr. Messina never had a face-to-face meeting with the buyer. We also know this. Mr. Carraga's name does not appear on one page of this application by way of the signatory. He couldn't. He couldn't. He was unlicensed. He couldn't sign it. But the fact that he was unlicensed doesn't draw the inference that he had any idea about proceeds being distributed. So the fact that these three or four other transactions just happened to involve straw buyers is all a coincidence. That's what the trial court had to presume. But with regards to those three or four previous transactions, no one got on the stand and ever testified that Carraga had any knowledge about that. We can't infer that he had any knowledge about that. It's all a coincidence. Did anybody testify that Carraga got any money out of this deal? No one. No one. The strongest thing you have is a statement, a speculative statement, by Bosig saying, I've got to go take care of Carraga. Take care of him for what? For other legitimate transactions. There was nothing at all saying, I've got to go take care of Carraga, because he was involved in implementing a loan on Bishop Street and he is in any way involved. There's nothing about Phil to celebrate. Let's assume, let's assume the only thing that Carraga got out of this was $100. He said, I'll submit this loan application and you guys do what you want with this loan. I'm pretty sure this guy isn't going to live there, given what I've said, but all I'm getting is $100. Isn't that enough? If Carraga doesn't know that the buyer A is a straw buyer, Colon testifies that he never tells Carraga that I'm a straw buyer. Prince testifies that he never tells Carraga that Colon is a straw buyer. Carraga has no knowledge at all whatsoever that the buyer has no intention of repaying. How do you know that? He goes to such great lengths to tell him what needs to be done in order for this transaction to be brought. Well, people like to get FHA loans because they only require 3.5% down payment. Whether they intend to repay the loan or not, if what Carraga knew was that the buyer had no intention of living in the property and yet he was getting an FHA loan that required it to be his primary residence at a lower interest rate and a lower down payment, isn't that enough? It might be enough, but they claim to show Carraga knew with certainty or any degree of reasonableness that the buyer wasn't going to live there. Well, now you're getting in the shades of, you know, the inferences that the trial court is going to draw. I understand, Judge. And for those reasons, we're asking that this matter be reversed. This trial be given a new trial. Thank you so much. Thank you. And again, thank you for your arguments here this morning and your briefs, which are excellent. And we will take the matter under advisement.